**BURNUP & SIMS, INC., a Delaware corporation, Plaintiff,**

v.

**Victor POSNER, Security Management Corp., NVF Company, Sharon Steel Company, Summit Systems, Inc., DWG Corporation, Southeastern Public Service Company, and Wright & Lopez, Inc., Defendants.**

No. 82–2067–Civ.

United States District Court, S.D. Florida.

July 29, 1988.

Rodney O. Thorson and James Loots, Skadden, Arps, Slate, Meagher & Flom, Washington, D.C., Sergio Alvarez–Mena, Morgan, Lewis & Bockius, Miami, Fla., for plaintiff.

Lee A. Rau, Reed, Smith, Shaw & McClay, McLean, Va., Ira M. Elegant, Buchbinder & Elegant, P.A., Miami, Fla., for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION TO DISMISS

HASTINGS, District Judge.

THIS CAUSE is before the Court on Defendants' motion for partial summary judgment and motion to dismiss Count I. After careful consideration of the motions, memoranda in support and in opposition and being fully advised, this Court GRANTS the motions for reasons stated below.

## FACTS

Taking the facts as pled in the light most favorable to Plaintiffs, the events which precipitated this litigation are as follows. Defendant Victor Posner (hereinafter referred to as "Posner") and Securities Management Corporation (hereinafter referred to as "SMC") are substantial stockholders in and may be deemed to control Defendants NVF Corporation (hereinafter referred to as "NVF"), Sharon Steel Corporation (hereinafter referred to as "Sharon") and their representative subsidiaries, including Summit Systems Company (hereinafter referred to as "Summit") and Southeastern Public Service Company (hereinafter referred to as "Southeastern").[1] Plaintiff Burnup & Sims, Inc. (hereinafter referred to as "Burnup") and Defendant Wright & Lopez, Inc. (hereinafter referred to as "Wright"), the latter of which is a wholly-owned subsidiary of Southeastern are competitors in the telephone and cable television (CATV) service industry. The Posner companies have launched a takeover attempt against Burnup. Plaintiff contends that the control or acquisition of Burnup by the Posner companies would violate various sections of the federal antitrust laws.

On or about October, 1975, the Posner companies began buying Burnup stock on the open market. By January 1976, Sharon had bought more than five (5%) percent of Burnup and a Schedule 13D was filed. By November 1978, Sharon had accumulated 14.9% of Burnup. By December 1979, the Posner companies had acquired a total of 28.8% of Burnup. When the Posner companies attained 32.3% of Burnup, it filed an amendment to its 13D Schedule which disclosed that Defendants intended to seek changes in Burnup's management and the Board of Directors. When the Posner companies reached an accumulated holding in Burnup of 33.6%, this litigation commenced. Subsequent to the filing of the Complaint, the Posner companies amended their 13D filing in which the Defendants announced their unequivocal intention to obtain control of Burnup.

---

1. The Defendants will at times be referred to as the "Posner Companies."

■ Count III of the Complaint, to which the Defendants motion for summary judgment is directed alleges that Defendants have violated Section 8 of the Clayton Act, 15 U.S.C. Section 19. That provision precludes the creation of interlocking directorships which would tend to eliminate competition in the subject industry or violate the anti-trust laws. Defendants claim the Plaintiff, as the target company, cannot raise such a claim since the express aim of Defendants is to seek total control of Burnup. Defendants also move to dismiss Count I of the Complaint which alleges a violation of Section 7 of the Clayton Act. That provision prohibits corporate actions that would substantially lessen competition in a given industry. Defendants contend that Burnup, as a target of a corporate takeover, has no standing to bring such a claim. This Court agrees with both of Defendants' legal arguments.

## DISCUSSION OF LAW

### A. MOTION FOR SUMMARY JUDGMENT

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–3, 91 L.Ed.2d 265 (1986).

Because Defendants now seek control of Burnup by merger, no claim under Section 8 can be had. *Las Vegas Sun, Inc. v. Summa Corp.,* 610 F.2d 614 (9th Cir.1979), *cert. denied,* 447 U.S. 906, 100 S.Ct. 2988, 64 L.Ed.2d 855 (1980). *See e.g., Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984) (parent and subsidiary cannot "conspire" to violate anti-trust laws because they are in effect, a single entity). Plaintiffs cannot maintain this action in light of Defendants' avowed purpose to merge the target into the Posner companies. The target would no longer be an independent competitor, but rather an integral part of the Posner companies. Hence the "evil" of interlocking directors between separate and distinct companies, to which Section 8 is directed cannot be applied.

### B. MOTION TO DISMISS

■ Recent case law and legal theory suggests that Plaintiff has no standing to bring any anti-trust claim whatsoever. Standing is a tool used by Federal courts to determine its powers under the law to decide a case. A lack of standing does not mean that the violation or harm pled is not true, but rather, the party who raises such a claim is inappropriate or otherwise excluded from the class of entities permitted to raise such a claim. Here, even assuming a lessening of competition in violation of the Federal anti-trust laws would occur, the target company does not suffer from any such injury, but rather is benefitted by it. *Burlington Industries, Inc. v. Edelman,* 666 F.Supp. 799 (M.D.N.C.1987); *Carter Hawley Hale Stores, Inc. v. The Limited, Inc.,* 587 F.Supp. 246, 250 (C.D. Cal.1984). As stated in *Burlington,*

> The type of injuries about which a target ... complains ... potential loss of employees, possible diversion of customers to other businesses, and the loss of trade secrets and financial information ... are not injuries that occur because of the potential lessening of competition attending the merger ... rather, these injuries occur because of a change in corporate control. The injuries are in no way related to the fact that less competition may exist in the open market.

*Burlington,* 666 F.Supp. at 805. *See especially,* F. Easterbrook and D. Fischel, *Antitrust Suits by Targets of Tender Offers,* 80 Mich.L.Rev. 1155 (1982). (Professor Easterbrook is now a judge on the Seventh Circuit Court of Appeals). As Judge Easterbrook demonstrates in his article, a target, such as Burnup here, is a poor private attorney general because it is not a "victim" of the alleged violation. The suit must be understood in its true sense, an attempt by the incumbent management to defend their own positions, not as an attempt to vindicate any public interest. Understanding that premise demonstrates the evils of permitting target companies to

make use of the antitrust laws as defensive weapons. Shareholders of the target are entitled to many benefits that flow from a tender offer and under any theory of corporate law, managers cannot be permitted to create their own peculiar subjective and possibly suspect "public interest" to the detriment of the targets' true owners, the shareholders. To do so defeats the very ideal of corporate democracy. Thus, when balancing the public policies, a possible anti-trust injury versus the entrenchment of inefficient management and the harm to vindicating shareholder rights, it follows that courts should not grant standing to target companies, especially where if there is an alleged injury, other more appropriate parties can challenge the merger.

Therefore, Defendants motion for summary judgment as to Count III and motion to dismiss Count I are GRANTED.[2]

---

[2] Because Count II of the three Count Complaint has been abandoned by Plaintiff, this Court considers that this matter is finally concluded.